NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ICAP CORPORATES, LLC, | Civil Action No.: 14-5451 (JLL) (JAD) |
| Petitioner, | OPINION |
| v. | |
| MICHAEL DRENNAN, | |
| Respondent. | |

**LINARES**, District Judge.

This matter comes before the Court by way of Magistrate Judge Joseph A. Dickson's Report and Recommendation dated November 18, 2015 ("Report and Recommendation" or "R&R"), recommending that the undersigned grant Petitioner ICAP Corporates, LLC ("ICAP")'s motion to vacate the National Futures Association ("NFA")'s Arbitration Award and deny Respondent Michael Drennan ("Drennan")'s cross-motion to confirm the Arbitration Award relevant to the above-referenced matter. (ECF No. 12, R&R.) Drennan timely filed objections to the R&R (ECF No. 13) and ICAP responded (ECF No. 18). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court adopts Judge Dickson's R&R, and vacates the Arbitration Award.

1

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

The underlying arbitration arises from Drennan's employment at ICAP. According to its website, ICAP "provide[s] a wide variety of electronic execution, broking, risk mitigation, messaging, and information services to wholesale market participants." *Who we are*, ICAP.com, http://www.icap.com/who-we-are.aspx (last visited Feb. 10, 2016). Drennan began working in the United States for ICAP as the Head of Financial Futures and Options – North America (hereinafter "U.S. Futures Desk") on or about March 8, 2012. Drennan's employment was the subject of a two-year Employment Agreement that was executed in December 2011. (ECF No. 1-2, Amalfe Cert., Ex. E ("Employment Agreement" or "Agreement").)

Pursuant to the terms of the Employment Agreement, Drennan was to receive a fixed base salary of $300,000 and a quarterly incentive bonus. (*See id.* ¶ 3 and Addendum A.) For the first year of employment, the incentive bonus for the full year could not be less than $450,000; for the second year of employment, ICAP and Drennan were to "engage in good faith discussions" to negotiate the amount of the incentive bonus, notwithstanding that the amount of the incentive bonus "shall be at the sole discretion of the Company." (*Id.*) Ultimately, Drennan received $300,000 in base salary and a $450,000 incentive bonus for his first year of employment (*i.e.*, 2012). (*See id.*; *see also* Amalfe Cert., Ex. D ("Statement of Claim (Corrected)") ¶ 23.) Discussions and communications concerning Drennan's second year (*i.e.*, 2013) incentive compensation continued over a period of months, commencing in October 2012 and concluding in July 2013. (Amalfe Cert., Ex. G ("NFA Joint Hearing Plan") at Ex. A ("Agreed Facts") ¶ 6.) In March 2013, ICAP paid Drennan a $50,000 incentive bonus for the first quarter of 2013. (*Id.* ¶¶ 7, 8; *see also* Statement of Claim (Corrected) ¶ 23.) The parties could not agree on a

---

[1] A detailed factual background of this case is set forth in the R&R and will not be repeated here except where necessary to provide context for this Court's review.

2

compensation amount for 2013, and on July 12, 2013, Drennan exercised his contractual right to express his intention not to renew his contract with ICAP at the conclusion of its term. (*Id.* ¶ 9.) The same day, ICAP exercised its contractual right to place Drennan on "garden leave."[2]

For compensation disputes, the Employment Agreement specifically called for arbitration before the NFA "in accordance with [the NFA's] then-existing rules." (Employment Agreement ¶ 16.) On or about September 13, 2013, Drennan filed a Statement of Claim with the NFA (Amalfe Cert., Ex I), and filed a revised Statement of Claim on October 1, 2013 (Statement of Claim (Corrected)). The Statement of Claim (Corrected) alleged that ICAP refused to pay Drennan an appropriate bonus in light of his performance, and included causes of action for (1) breach of contract; (2) breach of covenant of good faith and fair dealing; (3) *quantum meruit*/unjust enrichment; and (4) promissory estoppel. *Id.*

The NFA appointed Charles Nastro, Alice Oshins, and Ernest Badway (the "Panel") as arbitrators to hear Drennan's claim and scheduled the arbitration to take place over the course of four (4) days. (Amalfe Cert., Ex. J (NFA correspondence dated Jan. 8, 2014) at 1; Amalfe Cert., Ex. K (NFA correspondence dated Feb. 4, 2014) at 1.) The parties submitted a Joint Hearing Plan to the NFA one month before the Hearing, setting forth, among other things, a list of witnesses and potential exhibits. (NFA Joint Hearing Plan). ICAP listed seven (7) witnesses to be called during the course of the proceedings: Sep Alavi, Jennifer Blaza, James P. Flynn, Esq., Richard Kaltenbach, Esq., Bill Naphin, Gary Pettit, and Gary Smith. (*Id.* at 6). Gary Smith (Deputy CEO of ICAP's Global Broking Business), Gary Pettit (ICAP's Executive Managing Director of Global

---

[2] "Under garden leave clauses, the employee promises to provide the employer with a relatively long period of notice (usually three to twelve months) before terminating the employment and moving on to a competitor. In exchange, the employer agrees to pay the employee's full salary and benefits during this period without requiring the employee to come to work. . . . The essential difference between garden leave clauses and the more traditional, post-employment restrictive covenants is not only that the employee is paid during the notice period, but also that he remains an 'employee' of his former employer." Greg T. Lembrich, *Garden Leave: A Possible Solution to the Uncertain Enforceability of Restrictive Employment Covenants*, 102 COLUM. L. REV. 2291, 2305 (2002).

3

Financial Futures and Options), and Jennifer Blaza (ICAP's Finance Business Partner) were based out of ICAP's London offices. (Amalfe Cert., ¶¶ 7-10). Drennan listed two witnesses, himself and Caroline Arnold, (NFA Joint Hearing Plan at 6), but Ms. Arnold did not testify. (*See* ECF No. 7-1, Drennan Verified Petition ¶ 17).

The Panel limited the testimony of ICAP's witnesses. Pertinent to this Court's review, Drennan's direct examination took place all of April 29, 2014 and the morning of April 30, 2014. (*See* Amalfe Cert., Ex. A (Apr. 29 Tr.) at 1-325; Amalfe Cert., Ex. B. (Apr. 30 Tr.) at 326-42.) ICAP began cross-examination of Drennan on April 30, 2014. (*See* Apr. 30 Tr. at 342.) At approximately 1:30 PM on April 30, prior to the completion of Drennan's cross-examination, the Panel requested an offer of proof from ICAP as to all but one of the witnesses it intended to call during its case-in-chief. (*See* Apr. 30 Tr. at 488:21-536:16.) The Panel ultimately precluded or limited testimony from four (4) of ICAP's seven (7) witnesses. Two of ICAP's witnesses— brokers Sep Alavi and Bill Naphin—were precluded from testifying entirely because these witnesses were not necessary to the "management issue" at hand. (Apr. 30 Tr. at 533:13-21.) The Panel also narrowed the testimony of ICAP witnesses Jennifer Blaza and Richard Kaltenbach, Esq. (Apr. 30 Tr. at 531:12-535:2).

The Panel decided to end the hearing after the third day, despite having set aside four days, and despite ICAP's request to extend the hearing. On April 25, 2014, ICAP requested additional hearing days beyond the four scheduled. (Amalfe Cert., Ex. M (email correspondence dated Apr. 25, 2015).) On May 1, 2014 at approximately 9:15 AM (the third day of the hearing and before Drennan had completed his case-in-chief), the Panel indicated that it was the last day of the hearing. (Amalfe Cert. ¶ 48.) ICAP did not begin its case-in-chief until approximately 11:30 AM that day. (*Id.* ¶ 50.) During ICAP's case-in-chief, the Panel directed ICAP's counsel to "move

4

on" (or similar) a total of 18 times. (*Id.* ¶ 51) (emphasis removed). Per the Panel's direction, Gary Smith began his testimony at approximately 6:00 PM EST on May 1, 2014. (*Id.* ¶¶ 52-58.) Thereafter, Richard Kaltenbach, Esq. began testifying at approximately 8:05 PM EST and concluded at 8:30 PM EST. (*Id.* ¶ 59.) The hearing concluded at that time.

Both parties submitted a "Closing Brief" on June 9, 2014 (Amalfe Cert., Ex. U ("ICAP Closing Br."); Amalfe Cert., Ex. V ("Drennan Closing Br.")), at which point the Panel closed the record. (Amalfe Cert., Ex. X (email correspondence dated June 13, 2014).) The Panel ultimately awarded Drennan compensatory damages of $850,000.00 and other costs of $10,150.00 for a total award of $860,150.00. (Amalfe Cert., Ex. AA (NFA Arbitration Panel's Order dated July 3, 2014).)

On August 29, 2014, ICAP filed a petition and accompanying motion to vacate the Arbitration Award. (ECF Nos. 1, 2 ("ICAP Mov. Br.").) On September 22, 2014, Drennan filed an Answer (ECF No. 6) and a cross-motion to confirm the Arbitration Award. (*See* ECF No. 7-5 ("Drennan Cross-Motion Br.").) On September 29, 2014, ICAP filed opposition to Drennan's cross-motion. (ECF No. 8 ("ICAP Opp. Br.").) On November 18, 2015, the Honorable Joseph A. Dickson, U.S.M.J. issued a Report & Recommendation that the undersigned grant ICAP's motion to vacate the Arbitration Award, and deny Drennan's cross-motion to confirm the Arbitration Award. (ECF No. 12, R&R.) On December 2, 2015, Drennan timely objected to the R&R. (ECF No. 13 ("Drennan Obj.").) On December 23, 2015, ICAP filed a response to Drennan's objections. (ECF No. 18 ("ICAP Obj.").) The matter is now ripe for resolution.

## **LEGAL STANDARDS**

### A. Objections to a Report & Recommendation

When a magistrate judge addresses motions that are considered "dispositive" the magistrate judge will submit a Report and Recommendation to the district court. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72; L. Civ. R. 72.1c(2). The district court may then "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions." 28 U.S.C. § 636(b)(1)(c); *see also* L. Civ. R. 72.1c(2). A Report and Recommendation does not have the force of law unless and until the district court enters an order accepting or rejecting it. *See United Steelworkers of Am. v. N.J. Zinc Co., Inc.,* 828 F.2d 1001, 1005 (3d Cir. 1987).

When a litigant files an objection to a Report and Recommendation, the district court must make a *de novo* determination of those portions to which the litigant objects. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b); L. Civ. R. 72.1c(2). "'De novo review' means the district court must consider the matter referred to a magistrate judge anew, as if it had not been heard before and as if no decision previously had been rendered." *Mark IV Transp. & Logistics, Inc. v. Lightning Logistics, LLC*, No. 09-6480, 2014 WL 7073088, at *1 (D.N.J. Dec. 15, 2014) (quoting 12 Fed. Prac. & Proc. Civ. § 3070.2 (2d ed.) (quotation marks omitted). However, at the same time, "[t]he district court, consistent with congressional intent in [28 U.S.C. §] 636(b)(1), may place reliance upon a magistrate judge's proposed findings and recommendations consistent with 'the exercise of sound judicial discretion.'" *United States v. Lightman*, 988 F. Supp. 448, 457 (D.N.J. 1997) (quoting *United States v. Raddatz*, 447 U.S. 667, 676 (1980)). Furthermore, *de novo* does not mean that a district court is required to consider objections that were not presented before the magistrate. *See Jiminez v. Barnhart*, 46 Fed. Appx 684, 685 (3d Cir. 2002) ("[B]ecause Appellant

6

raised the argument that she is entitled to a closed period of disability for the first time in her objections to the Magistrate Judge's Report and Recommendations, and not in her opening brief, we deem this argument invalid.") (citing *Laborers Int'l Union of N.A. v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)). Similarly, Local Civil Rule 72.1c(2) provides that the district court "need not normally conduct a new hearing and may consider the record developed before the Magistrate Judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions." L. Civ. R. 72.1c(2).

### B. Vacatur of an Arbitration Award

With regards to a motion to vacate, the movant bears the high burden of proving that the arbitration award should be vacated. *Handley v. Chase Bank,* 387 Fed. Appx. 166, 168 (3d Cir. 2010) (citing *Dluhos v. Strasberg,* 321 F.3d 365, 370 (3d Cir. 2003)) ("The party seeking to overturn an award bears a heaving burden as these are 'exceedingly narrow circumstances.'"). This Court may not vacate an arbitration award merely because it views the merits of the claims differently or because the Court feels that the arbitrator made a factual or legal error. *See, e.g., Major League Umpires Ass'n v. American League of Professional Baseball Clubs,* 357 F.3d 272, 279 (3d Cir. 2004). Thus, arbitration awards are entitled to a strong presumption of correctness, which can only be overcome in extremely narrow circumstances. *See* R&R at 7-10 (citing relevant case law).

Section 10(a) of the Federal Arbitration Act ("FAA") provides that a Court may vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
> 
> (2) where there was evident partiality or corruption in the arbitrator;

7

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.

The Third Circuit has also recognized certain common law and public policy grounds for vacating an arbitration award. Vacatur has been permitted if the award is completely irrational. *See, e.g., Mutual Fire, Marine, & Inland Ins. Co. v. Norad Reinsurance Co. Ltd.,* 868 F.2d 52, 56 (3d Cir. 1989). In order to vacate an arbitration award on such grounds, there must be absolutely nothing in the record to justify the arbitrator's decision. *See, e.g., News America Publications, Inc. Daily Racing Form Division v. Newark Typographical Union, Local 103,* 918 F.2d 21, 24 (3d Cir. 1990). An arbitrator's manifest disregard for the law is sufficient to vacate an arbitration award. *See, e.g., Tanoma Min. Co., Inc. v. Local Union 1269, United Mine Workers of America,* 896 F.2d 745, 749 (3d Cir. 1990).

Lastly, arbitration awards may be vacated if they violate clearly defined and dominant public policy as "ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Eastern Associated Coal Corp. v. United Mine Workers of America,* 531 U.S. 57, 62-63 (2000).

## ANALYSIS

### A. The R&R

The R&R concludes that vacatur of the Arbitration Award under 9 U.S.C. § 10(a)(3) is justified because the Panel "precluded ICAP from presenting 'evidence pertinent and material to the controversy' and also significantly truncated ICAP's time to present its other evidence." (R&R at 11.) In reaching this conclusion, Judge Dickson highlights the "process by which the Panel determined to exclude or limit testimony from ICAP's witnesses and to cancel the pre-scheduled fourth day of the hearing[.]" (*Id.*) The R&R discusses the Panel's requested proffer of ICAP's witnesses and their availability, and frames the question before the Court in this way:

> whether a party can be said to have had a fundamentally fair hearing when the Panel and the parties agree to a four day Hearing and then, after the arbitration has begun, and after the defense has put its strategy into motion, the Panel cuts the Hearing to three days on the morning of the third day, requiring one of the defense's main witnesses to testify after lengthy travel and with little or no sleep, and precluding the testimony of other witnesses that the party asserts is necessary to rebut key testimony?

(*Id.* at 14.) The R&R answers this question in the negative. First, the R&R concludes that "[t]he record reflects that ICAP was prepared to present its evidence and witnesses 'on the date scheduled' and that the Panel altered that schedule, to ICAP's detriment, mid-hearing." (*Id.*). Second, the R&R finds that the evidence excluded by the Panel was relevant, such that hearing was fundamentally unfair in violation of 9 U.S.C. § 10(a)(3). (*Id.* at 15-26.)

With respect to the Panel's altering of the schedule and limiting / excluding witnesses, the R&R notes that "ICAP's counsel was required to provide a proffer without forewarning, without additional time to prepare, and without the benefit of her notes" and that the decision to exclude or limit ICAP's witnesses was based largely on this "one inadequate opportunity." (*Id.* at 18, 19.)

9

> Had the Panel provided ICAP's counsel with advance notice that a proffer would be necessary, given ICAP's counsel some time to prepare, or simply allowed counsel to obtain her notes regarding the witnesses in question so that she could make a meaningful proffer, perhaps its decision to exclude ICAP's witnesses would not be so prejudicial. Consequently, this Court's determination is not based solely on the fact that the Panel excluded certain witnesses and limited others. But rather, this Court also finds that the <u>way</u> in which the Panel reached their decision was a result of an unfair proffer and process. The arbitrators deemed the testimony of ICAP's witnesses unnecessary based on a procedurally flawed and prejudicial situation that the arbitrators themselves created, and without the information necessary to fairly evaluate ICAP's proposed witnesses. Perhaps most troubling is the fact that, though ICAP's counsel asked for an opportunity to review her records to obtain that information, the Panel did not want it. Had the Panel reviewed all of the information and allowed ICAP's counsel to make a full and complete proffer and then, at that time, determined that the testimony of certain witnesses would either be precluded or limited, then perhaps this Court's recommendation would be different. It is impossible to determine whether the Panel's ultimate decision to exclude certain witnesses and limit the testimony of others was rationally based, given the fact that Drennan's cross-examination was not yet complete, the flawed proffer, and the Panel directing ICAP's counsel as to which of its witnesses should testify to which facts. Improperly excluded relevant evidence undermines any claim of rational decision making.

(*Id.* at 19-20) (internal citation and footnote omitted).

The R&R notes that the Panel ultimately limited Jennifer Blaza and Richard Kaltenbach, Esq. in their testimony and precluded Sep Alvi and Bill Naphin from testifying entirely. (*Id.* at 22.) The R&R relies on the certification of ICAP's counsel, which "provides a detailed list of the topics to which each of these witnesses <u>would have</u> testified." (*Id.* (citing Amalfe Cert. ¶¶ 12-14, 17); *see also id.* at 22-24 (discussing the excluded testimony).) The R&R states that upon "extensive review of the parties' submissions . . . it appears that none of ICAP's other witnesses testified regarding the topics that it intended its precluded witnesses, Messrs. Alavi and Naphin, to address. Additionally, no other witnesses testified regarding the information that the Panel

10

precluded Ms. Blaza and Mr. Kaltenbach from testifying to." (*Id.* at 24.) Judge Dickson finds that this evidence was material, and notes that, in his closing brief before the NFA, Drennan "used to his advantage the fact that [certain testimony] went unrebutted." (*Id.* at 25 (citing Drennan Closing Br. at 17, 18, 60).) Ultimately, Judge Dickson concludes that the Panel's actions in precluding testimony intended to rebut key evidence violated 9 U.S.C. § 10(a)(3), which provides that a court may vacate an arbitration award "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy[,] or of any other misbehavior by which the rights of the party have been prejudiced[.]" *Id.* Accordingly, Judge Dickson recommends that the undersigned grant ICAP's motion to vacate the Arbitration Award and deny Drennan's cross-motion to confirm the Arbitration Award under 9 U.S.C. § 10(a)(3).

### B. Objections and Responses

Drennan objects to the R&R on multiple grounds. First, he notes that precedent strongly favors confirming the Arbitration Award. (Drennan Obj. at 4-5.) Second, Drennan argues that ICAP was afforded due process under the NFA's rules, and that ICAP was not prejudiced when the Panel cancelled the fourth hearing day. (*Id.* 5-13.) For example, Drennan contends that ICAP long had notice that the Panel expected witness proffers and availability of witnesses at all times, such that the requested proffer or request that Smith be available earlier than Friday should not have come as a surprise to ICAP. (*Id.*)[3] Third, Drennan argues that the Panel did not exclude relevant evidence, but instead limited repetitive evidence. (*Id.* at 13-30.) Drennan contends that the cancellation of the fourth day resulted in a net loss of time of less than 2.5 hours, and that the Panel was well within its rights to conclude that a fourth day was not necessary in light of the

---

[3] Drennan also argues that the Panel duly considered the partial summary judgment motion and appropriately handled ICAP's request to extend the hearing (Drennan Obj. at 9-12), but because these issues did not factor in to the R&R's conclusions, the Court need not address them here.

11

proffer made by ICAP. (*Id.* at 13-16.) Additionally, he argues that Alavi and Naphin were rightly excluded because they were redundant in light of the proffer made before the Panel that they would discuss essentially the same topics already covered by Pettit and Smith, namely Drennan's performance. (*Id.* at 16.) Furthermore, Drennan argues that the Panel heard testimony on all of the relevant topics, including both the oral proffer made during the hearing and the belated proffer made in support of the motion to vacate the Arbitration Award. (*Id.* at 18-22; *see* ECF No. 16, Flynn. Supp. Decl., Ex. M Replacement ("Testimony Chart") (detailed chart comparing witnesses and testimony); ECF No. 13-2, Flynn. Supp. Decl. ¶¶ 29-50.) Drennan specifically points out that Blaza and Kaltenbach's testimony was allowed and that they testified on a variety of issues. (*Id.* at 22-25 (citing transcript).) Additionally, Drennan asserts that the Panel did not prematurely decide to cancel the fourth day of the hearing, but rather extended the third day when it became apparent that Smith could testify that day and determined that a fourth day was not needed. (*Id.* at 25-27.) Finally, Drennan argues that precedent supports confirming the Arbitration Award because the Panel heard the necessary evidence, and that to adopt the R&R "would send a signal to parties and arbitrators alike that the public policies and deferential standards under which review of arbitrations occurs have been forgotten or forsaken." (*Id.* at 27-30.)

ICAP responds by first noting that the Court may place reliance on the R&R. (ICAP Obj. at 2.) More substantively, ICAP argues that Drennan is not permitted to unilaterally supplement the record after the issuance of the R&R, because permitting him to do so would essentially be granting him a "second bite at the apple." (*Id.* at 2-7.) For example, ICAP contends that Drennan did not argue many things before Judge Dickson that are now being argued in front of the undersigned for the first time, including: that ICAP allegedly had advance notice that a proffer would be required; that ICAP was not prepared to submit evidence and chose to "ignore or skirt"

12

NFA rules; that Smith's appearance on the third day of the hearing was a "matter of mundane scheduling"; that loss of the fourth day only resulted in loss of approximately 2.5 hours of hearing time. (*Id.* at 4-5.) Moreover, ICAP claims that Drennan's opposition before Judge Dickson presented only a "general challenge" of ICAP's argument that the precluded testimony was not repetitive and was highly relevant. (*Id.*) In contrast, with the R&R in hand, Drennan now presents numerous citations to the record to argue that the precluded testimony was either not relevant or duplicative. (*See* Testimony Chart.) Furthermore, ICAP asserts that the R&R should be adopted in all respects because it correctly concludes that the Panel improperly truncated ICAP's time to present pertinent and material evidence, in a manner that was unfair and prejudicial. (*Id.* at 7-15.) For example, despite the novel arguments presented in Drenann's Objections to the R&R, ICAP contends that no other ICAP witnesses testified to a large number of the "very relevant and specific topics" that the limited / excluded witnesses would have testified to. (*Id.* at 10-13.) Finally, ICAP argues that the Panel's insistence on an oral proffer, in the middle of Drennan's chief-testimony, and without the benefit of counsel's notes, demonstrates that the decision to limit / exclude witnesses was prejudicial. (*Id.* at 13-17.)

Having reviewed the R&R and underlying cross-motions *de novo*, the Court adopts the R&R as the findings of fact and conclusions of law of this Court. The Court finds that the Arbitration Award should be vacated under 9 U.S.C. § 10(a)(3), because the Panel was "guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy." *Id.* The Court agrees with the R&R's thorough analysis that the process by which the Panel elected to exclude evidence (*i.e.*, the oral proffer without the aid of notes during Drennan's case-in-chief) was prejudicial and led to the exclusion of evidence pertinent and material to the controversy.

13

The Court agrees with the R&R that the process by which the Panel elected to limit / exclude ICAP's witnesses was prejudicial. As the R&R aptly states, "[t]he arbitrators deemed the testimony of ICAP's witnesses unnecessary based on a procedurally flawed and prejudicial situation that the arbitrators themselves created, and without the information necessary to fairly evaluate ICAP's proposed witnesses." (R&R at 19-20.) A review of the relevant portion of the transcript supports this conclusion. (Apr. 30 Tr. at 488:21-536:16.) Even if ICAP had notice that a proffer would be required under NFA rules (*see* Drennan Obj. at 4-5), the Panel would not even allow ICAP's counsel to reference her notes. (*See* Apr. 30 Tr. at 519:17-22, 526:5-537:1.) Furthermore, the proffer took place during Drennan's cross-examination as part of his case-in-chief, before all of the issues had been fully fleshed out. (*See* Apr. 30 Tr. at 523:4-15 (ICAP counsel noting that the Panel was "asking [her] to anticipate every single thing that's coming out during Mr. Drennan's cross-examination, which isn't even complete").) Ultimately, as noted, the Panel limited Jennifer Blaza and Richard Kaltenbach, Esq. in their testimony and precluded Sep Alvi and Bill Naphin from testifying entirely.

The Court finds that the excluded evidence was "pertinent and material" to the controversy. ICAP's Verified Petition and accompanying documents detail the testimony that the four witnesses would have provided, if permitted:

- <u>Alavi and Naphin</u>, based on first-hand knowledge, would have provided testimony to rebut Drennan's testimony about his purported performance-related successes, including his purported development of ICAP brokers, including Alavi and Naphin; the business on the U.S. Futures Desk; purported contributions and increased revenue per broker and profits for the Desk; purported training of ICAP brokers; financial projections for the business at issue; and rebuttal to the contention that he could not entice hedge funds to work with ICAP.

- <u>Blaza</u> would have testified about specific financial errors and misrepresentations in Drennan's quarterly reports and month-over-month revenue calculations which supported Drennan's substantial damages calculations; the data in the ICAP reports that would have directly contradicted Drennan's assumptions; the ICAP budgets that set out a proposed

14

salary and bonus for Drennan; her efforts to work with management to provide an offer to Drennan for his Year 2 bonus; and her personal conversations with Drennan.

- Kaltenbach would have testified in detail about the negotiation and terms of the Employment Agreement and discussions directly with Drennan and his counsel about the contract, challenging Drennan's alleged reasonable reliance on statements or promises made prior to the execution of the Agreement based on his own personal discussions and negotiations with Drennan and his counsel; ICAP's Year 2 bonus proposal and Drennan's allegation of a guaranteed minimum bonus; a salary overpayment to Drennan; the decision to put Drennan on garden leave and how ICAP employees are compensated on garden leave; and why ICAP had not paid certain expenses to Drennan.

(ICAP Obj. at 10 (citing Amalfe Cert. ¶¶ 40, 42-46 and ICAP Mov. Br. at 11-15).) As noted, Drennan argues that all of these topics were covered by other witnesses. (*See* Testimony Chart; ECF No. 13-2, Flynn. Supp. Decl. ¶¶ 29-50.)[4]

With respect to Messrs. Alavi and Naphin, the Court agrees that Smith and Pettit were able to testify about Drenann's performance generally. However, the Court finds that the proffered testimony of these individuals was broader in scope than the testimony of Smith and Pettit, and crucially would have been first-hand testimony, as they were subordinates of Drennan. Similarly, although review of the transcript reveals that many of the topics that Blaza and Kaltenbach would have testified to were generally covered in the proceedings, they were not fully fleshed out. For example, ICAP states that Blaza would have testified about specific financial errors and misrepresentations in Drennan's month-over-month revenue calculations which supported Drennan's substantial damages calculations. (*See* Amalfe Cert. ¶ 42.) Drennan argues that Blaza testified on this point. (*See* Testimony Chart (citing Tr. 778:18-779:7, 819:20-822:7).) However, a review of the transcript shows that the testimony was in fact severely limited. Indeed, at page

---

[4] The Court disagrees with ICAP that this argument is "inappropriate for consideration" because the Court finds that Drennan seasonably raised the argument that the limited / excluded testimony was repetitive or irrelevant before Judge Dickson. (*See* Drennan Cross-Mov. Br. at 20-21.) Although Drennan now, for the first time, engages in a line-by-line analysis, the Court construes this as expounding upon an already-raised argument, and thus appropriate for consideration.

778, ICAP's counsel questions Blaza and she essentially provides a single sentence of testimony on the issue. (Tr. 779:5-7 ("[Y]ou can see for the 2013, July to December revenue was nowhere near as high as what [Mr. Drennan's estimated month-over-month growth] would indicate.").) Then, at pages 819-822, Blaza answers a question on cross-examination and discusses different methods of analyzing month-over-month revenue growth, essentially clarifying how this topic was worthy of further exploration. Significantly, Drennan's revenue results were a primary focus of Drennan's closing argument brief. (*See* Drennan Closing Br.) Furthermore, it cannot be forgotten that the decision to exclude / limit these witnesses occurred before Drennan's case-in-chief had even concluded. When reviewing the record holistically and *de novo*, the Court agrees with the R&R's conclusion that the excluded evidence was "pertinent and material" to the controversy, and that the Arbitration Award is subject to vacatur under 9 U.S.C. § 10(a)(3). (*See* R&R at 22-25.)

## CONCLUSION

Having thoroughly reviewed Magistrate Judge Dickson's November 18, 2015 Report and Recommendation *de novo*, including Drennan's objection thereto, and ICAP's response, this Court hereby adopts the Report and Recommendation as the findings of fact and conclusions of law of this Court, and thus grants ICAP's motion to vacate the arbitration award. An appropriate Order accompanies this Opinion.

DATED: February 16, 2016

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE